138 So. 832

## MITCHELL v. PARKER.

### 2 Div. 995.

Supreme Court of Alabama.
Dec. 17, 1931.

Rehearing Denied Jan. 21, 1932.

J. F. Aldridge, of Eutaw, for appellant.

Jenkins Jackson and Patton & Patton, all of Livingston, for appellee.

### KNIGHT, J.

James A. Mitchell, appellant here, proponent in the court below, filed for probate, in the probate court of Sumter county, an instrument in writing purporting to be the last will and testament of Agnes S. Parker, late an inhabitant of Sumter county.

On the filing of the application for the probate of this instrument, Robert S. Parker, a brother of the decedent, filed a contest, resisting the probate of the instrument, setting up three separate grounds: (1) That the will is not properly executed: (2) that the testatrix, Miss Agnes S. Parker, was of unsound mind at the time of the execution of the will; and (3) that the testatrix, Miss Agnes S. Parker, was unduly influenced against the said R. S. Parker, at the time of the execution of said will.

The contestant made demand in writing for a jury trial, and the cause was transferred to the circuit court of Sumter county for trial, but the record is silent as to which side requested the transfer. A trial was had in the circuit court with a jury, resulting in a verdict and judgment sustaining the contest, and from this judgment the present appeal is prosecuted by the proponent.

From the evidence in the cause, it appears that Miss Parker and the contestant were brother and sister, and that Miss Parker was a single woman, with the contestant as her only brother.

It would serve no useful purpose to attempt to set out in detail the evidence in the cause. Only one witness, the contestant, testified that the testatrix was of unsound mind. The other witnesses introduced by contestant testified to facts which tended to show that the testatrix for many years labored under hallucinations and insane delusions upon some subjects, and that this condition had existed long prior to the date of the execution of the will in 1909, and continued down to the time of her death. The tendency of contestant's evidence was to the effect that Miss Parker was obsessed with the idea that the people were trying to move the town of Coatopa, and that they were trying to take her property, and that her brother was in league with them for the purpose of ruining her financially, and that he was working at all times against her and her best interest. She owned real estate at Coatopa, and was distressed greatly by the idea that certain people in and around that place were determined to destroy her financially. The testimony for contestant further tended to show that there was no foundation in fact for her fears and apprehensions, or that her brother was trying to injure her.

The contestant introduced in evidence some letters received by him from his sister. It will serve no good or useful purpose to quote the language of any of these messages, but at least one of them shows the condition of the mind of the writer with reference to some of the people at and near Coatopa. There was testimony tending to show no basis in fact for these expressions against anybody, and the testimony of the brother tends to show that this mental delusion on the part of his sister reached out to and included him for the reason, without foundation in fact, that she claimed he was colluding with her supposed enemies to ruin her.

The testimony offered on behalf of proponent, in rebuttal, tended to show that the testatrix was mentally sound at all times. The bill of exceptions does not purport to set out all the evidence.

While the evidence for contestant is, as disclosed by the bill of exceptions, rather unsatisfactory, yet no motion for a new trial was made thereby to enable the court below to pass upon its sufficiency, and we can here only consider such questions as are presented for review; only a few principles of law are involved in this case, and they are so well understood that it scarcely seems necessary to state them.

The only ground of contest insisted upon before the jury was that the testatrix at the

time of the execution of the will in question was of unsound mind—insane. The main insistence was that she suffered from insane delusions, and that these were directed principally against the people in and around the little village of Coatopa, where testatrix owned real estate, and it was insisted that her delusions included her only brother, as being one of the class bent upon her financal destruction. Other than this, there was but meager evidence which tended to the slightest degree to show the total derangement of testatrix's mind.

■ Generally, it may be said that, if one has memory and mind enough to recollect the property he is about to dispose of by will, and the persons to whom he wished to will it, and the manner in which he wished it to be disposed of, and to know and to understand the business he was engaged in, he had, in legal contemplation, a sound mind. And it is also said that great age, bodily infirmity, and impaired mind would not vitiate a will made by one possessing such mental capacity. Taylor v. Kelly, 31 Ala. 59, 68 Am. Dec. 150. And this definition of mental capacity has been repeatedly adopted by this court in numerous cases thereafter coming before this court.

■ It is also the settled law in this state that partial insanity will invalidate contracts generally, and proof of such will be sufficient to defeat a will, the direct offspring of such partial insanity. This rule existed both at common law and in the ecclesiastical courts, although the testator at the time of the execution of such will was sane in other respects, and upon other subjects. "The reason of this rule is, because a will thus made, is an insane act—that is, the act of an insane man, and the law will not * * * uphold such an act." Cotton et al. v. Ulmer, 45 Ala. 378, 6 Am. Rep. 703. Again, it is said that if one, against "all evidence and probability, persistently believes supposed facts which have no existence except in his perverted imagination, and conducts himself, however logically, upon the assumption of their existence, he is, so far as they are concerned, under an insane delusion." Batson v. Batson et al., 217 Ala. 450, 117 So. 10, 12.

■ The first error insisted upon by appellant goes to the action of the court in overruling proponent's objection to the following question propounded to contestant while on the stand as a witness: "Do you know whether or not your sister, at the time just prior to the execution of this will, accused you of working against her interest and with the people of Coatopa to help confiscate her property?" Only the general objection was offered. Manifestly this question was competent and called for testimony having a direct bearing upon one of the issues in the case.

■ When the insanity, vel non, of a person is involved in the issues submitted to the jury, a wide latitude is allowed in tracing the life record of the subject. In fact, it has been said that, on such an inquiry, "every act of the party's life is relevant to the issue." Howard v. State, 172 Ala. 402, 55 So. 255–257, 34 L. R. A. (N. S.) 990. Of course, this expression must be understood to carry the necessary limitation that the acts inquired about must throw some light upon the inquiry.

■ For like reasons, as for any ground of objection assigned, the letters introduced in evidence by contestant were admissible, and in this ruling of the court there was no error prejudicial to appellant.

■ It is next insisted that the court committed reversible error in overruling proponent's objection to the following question propounded to the witness Scales: "But in your opinion, she did have insane delusions?" It will be noted that the witness had testified that he had known the testatrix from the time she reached the age of five years to the date of her death. He had attended school with her, and that he had been in constant contact with her. This witness was competent, though a nonexpert on the subject, to give his opinion upon her sanity, or insanity, in connection with the facts. Only the general grounds of objection were assigned. We think the witness was properly allowed to make answer to this question, as for any grounds of objection assigned. If, as now insisted by appellant, the correctness of which insistence we do not concede, this question and the answer thereto invaded the province of the jury, the answer is, no such ground of objection was assigned.

■ It is next urged that the court committed reversible error in giving at request of contestant the following written charge numbered 3: "I charge you, gentlemen of the jury, that if a person against all evidence and probability, persistently believes supposed facts which have no existence except in his perverted imagination and conducts himself, however logically, upon the assumption of their existence, he is, so far as they are concerned, under an insane delusion." This charge finds support in the holding in the case of Batson v. Batson, 217 Ala. 450, 117 So. 10.

We find no reversible error in the record, and an affirmance will be entered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.