142 So. 432

### DELONEY v. STATE.
### 8 Div. 339.

Supreme Court of Alabama.
May 26, 1932.

Thos. E. Knight, Jr., Atty. Gen., and Thos. Seay Lawson, Asst. Atty. Gen., for the State.

C. P. Almon, of Florence, and A. H. Carmichael, of Tuscumbia, for appellant.

THOMAS, J.

The defendant was convicted of murder in the first degree, and his punishment fixed at a term of life imprisonment.

The organization of the court as shown by the transcript was in conformity to law and Supreme Court Rule 26 (Code 1923, vol. 4, p. 887).

The indictment is in Code form and is sufficient. Section 4556, form 76, Code 1923; Jinright v. State, 220 Ala. 268, 125 So. 606; Jones v. State, 136 Ala. 118, 123, 34 So. 236; Elam v. State, 25 Ala. 53; Boon v. State, 69 Ala. 226; Walker v. State, 150 Ala. 88, 43 So. 188; Noles v. State, 24 Ala. 672; Sanders v. State, 2 Ala. App. 13, 56 So. 69; Sullivan v. State, 23 Ala. App. 464, 465, 127 So. 256.

The judgment entry shows the presence of the defendant and his counsel at all the proceedings from the arraignment through the judgment and sentence, and suspension thereof pending his appeal (Frost v. State [Ala. Sup.] 142 So. 427); [1] shows the proper order for a special venire, for service of a copy thereof, and for service of a copy of the indictment upon the defendant as required by law.

The pleas filed at his arraignment and trial were "not guilty" and "not guilty by reason of insanity," as duly shown by the judgment entry. Sections 4572, 4573, Code; Baker v. State, 209 Ala. 142, 95 So. 467; Morrell v. State, 136 Ala. 44, 34 So. 208.

The defendant was convicted of murder in the first degree for having killed one Eloise Smith, on the night of January 20, 1931, and was sentenced to the penitentiary for a term of his natural life. There is no dispute as to who killed the deceased. The defendant admits the shooting, but says that he is not responsible for his acts as he was insane at the time of the commission of that crime.

The evidence for the state shows that the deceased was an inmate of a "house"; that defendant was a married man whose home was in another town near by; that defendant had been associating with the deceased for some time, met her at this house, drove about town with her, returned to said house after she had suggested they go to defendant's home town and drive around, to which he demurred and finally declined; that he had been with the deceased for several hours, returned to the house, and after being with her for a time, started to leave, when deceased objected and the defendant deliberately and without provocation shot her several times while she was sitting in a chair and he was standing in the doorway.

The defendant's version of the affair is not greatly different from that of the state's except that defendant's evidence tends to show that the deceased was "running after the defendant" and threatened to take him from his wife; that on the night of the homicide, deceased took his car keys, hat, and coat to prevent his leaving her room. The defense is rested largely on the question of his sanity.

---

[1] Post, p. 232.

Several physicians, none of whom were shown to be alienists, testified to the defendant's somewhat impaired physical condition and to the fact that he had "spells." Several of his neighbors testified as to the particularly peculiar and abnormal actions or traits of the defendant upon which they based their conclusions that there were times when he was insane.

■■ The court was not in error in sustaining the state's objection to the question propounded to defendant as to the number of children he had. However, although the objection was sustained, the question was answered and the answer thereto was not excluded. This was immaterial and irrelevant. Code 1928, p. 1935, Supreme Court Rule 45; Henderson v. Tennessee Coal, Iron & Ry. Co., 190 Ala. 126, 129, 67 So. 414; 1 Enc. Dig. 289; 13 Enc. Dig. 78.

■■ The court correctly excluded the answer of defendant on cross-examination, "I was crazy as a loon," on the ground that it was not responsive to the question asked, "Was your head aching?" Mims v. State, 23 Ala. App. 94, 95, 121 So. 446. An answer not responsive to the question is properly excluded. Jones v. State, 156 Ala. 175, 47 So. 100. Moreover, it was an improper conclusion of the witness as to the issue of fact being tried, and for the jury. Miller v. Whittington, 202 Ala. 406, 80 So. 499; Councill v. Mayhew, 172 Ala. 295, 55 So. 314; Dulaney v. Burns, 218 Ala. 493, 119 So. 21.

■ The court excluded without error the statement made by Dr. Wright, a witness for the defendant, that, "In my opinion his brain was diseased," for that the witness was permitted to answer, without objection: "My observation and opinion is that he had a tumor on the brain." The doctor testified that he was a practicing physician; that he had been practicing about eighteen months; that he had been through the books; that he was a graduate of the Universities of Alabama and Tennessee and had studied the make-up of the brain and its parts and functions; that he attended defendant one time and found a contused condition. The effect of his testimony was that in his opinion defendant had a brain tumor, and that he thought he was suffering from acute indigestion; that this one time he administered to him at 3 o'clock in the morning.

■■ The court properly excluded the answer of defendant's witness Mrs. Spangler: "Defendant is not like other people." This answer was not responsive to this question: "Would you say from what you have said that defendant is a sane or an insane man?" For this reason the answer was properly excluded on motion. The witness did not state the peculiarities on which her observation and opinion were based. However, witness was

permitted to answer: "In my opinion defendant is not sane at all times."

■ The court was correct in sustaining the solicitor's objection to the question propounded to Dr. Greer: "Now what things have you noticed about defendant that would indicate a difference from normalcy or irrational conduct?" That witness had testified: "During the time I am talking about I don't think defendant was normal. I am not an insanity expert, but I have studied the books on the subject. It is rather difficult to define insanity. In some types it is easy to define and easily discovered." And was then asked the question set out above. After the court had sustained the objection, Dr. Greer was permitted to testify as follows:

"The question was then asked by defendant's counsel: 'What things have you seen him do, doctor and what things have you known and observed him doing?' And witness answered: 'Well for instance, we had defendant in the hospital for an operation. He came more or less violent and jumped out of the bed and went home. About 9:30 or 10:00 o'clock at night. He was to have been operated on the next morning. He did not get permission to go. He just left.'

"The defendant's counsel then asked witness this question: 'Did you notice whether or not defendant was nervous, highly nervous?' Witness answered: 'Well his conduct regarding things that came up always led me to believe he was not a normal individual.' Solicitor moved to exclude this answer because not responsive to the question. The court sustained the motion and defendant's counsel then and there in open court duly excepted.

"On further examination witness said: 'From the history of defendant's case and the observation I have made of him he has shown symptoms of brain tumor. Brain tumor is evidenced by light convulsions, depending on the type; some of them last over a period of years with varying symptoms; it affects a man's health and mind and will. I wouldn't say positively that defendant has a brain tumor, but the history of his conduct and symptoms would make it plausible that he had. At times I think he is sane. I don't think at all times he is sane. I have not seen him in one of the spells. The drinking of liquor has to do with a man's will power and his health and his nerves and his brain. I don't believe he was sane all the time.' * * *

"The solicitor then asked witness this question: 'And you also wouldn't tell the jury on your oath that this defendant had any disease of the mind which at times prevented him from discriminating between right and wrong, would you?' Defendant's counsel objected to the question because it is not the test, illegal. The court overruled the objection and defendant's counsel then and

there in open court duly excepted. Ques. 'Would you doctor?' Ans. 'I think he is absolutely normal in his feeling and being about a good many things.'

"On further examination witness said: 'A man usually controls himself if he is perfectly sane. A man who fails to do this is more or less insane. If a man gets mad and loses his temper to the extent of taking a gun and killing somebody, he hasn't weighed the consequences to say the least of it. There are physical and mental conditions there that keep him from controlling himself.' ".

The defendant was in no way injured in these rulings, as he later testified as to the accused's conduct.

■ On cross-examination the witness recognizes the fact that there is a difference between abnormality and insanity which excuses from crime, and did not give the opinion that the accused was insane at or about the time in question. The court properly excluded the following answer of defense witness Greer: "Well his conduct regarding things that came up always led me to believe he was not a normal individual." The question asked him was: "Did you notice whether or not defendant was nervous, highly nervous?" The answer was not responsive to the question; hence was properly excluded.

■ The court did not err in overruling the defendant's objection to a question propounded by the state on cross-examination of defense witness Greer: "And you also wouldn't tell the jury on your oath that this defendant had any disease of the mind which at times prevented him from discriminating between right and wrong, would you?" It merely tested the witness' knowledge and opinion from the facts indicated. Ragland v. State, 125 Ala. 12, 27 So. 983; Jones v. State, 181 Ala. 63, 61 So. 434; Fondren v. State, 204 Ala. 451, 86 So. 71; Lambert v. State, 207 Ala. 190, 92 So. 265.

■ In the cross-examination by the solicitor of the witness Greer, for the purpose of bringing out the facts, the solicitor was permitted to ask: "If in other words on the night of the shooting none of those symptoms were present, in four or five days after that you wouldn't say he was approaching one of those spells that night?" It was a proper cross-examination of defendant's witness on matters testified to on direct examination, as to physical and mental condition of the defendant. The witness did not answer the last question as to whether on the night of the shooting defendant was approaching a spell.

■ The question to the witness Patterson was of drunkenness and within the rule of shorthand rendition of facts. Sovereign Camp, W. O. W., v. Hoomes, 219 Ala. 560, 563, 122 So. 686.

██ The court properly sustained the solicitor's objection to the question asked defense witness Nix: "Did he seem to be conscious or unconscious during that time of what he was doing?" The witness had fully stated the facts and there was no error in the ruling. James v. State, 193 Ala. 55, 69 So. 569, Ann. Cas. 1918B, 119; Heningburg v. State, 153 Ala. 13, 45 So. 246; Russell v. State, 17 Ala. App. 436, 87 So. 221; s. c. Ex parte Russell, 204 Ala. 626, 87 So. 227.

██ The scope of cross-examination is largely within the trial court's discretion. Defense witness Nix had testified that after the defendant was put in jail, on some days he appeared happy and on other days despondent; hence it was proper for the state, on cross-examination, to ask him if he had not noticed others who had been committed to jail to appear depressed at times and at other times lively. It was merely testing the witness' knowledge, recollection, and power of observation. In this there was no reversible error.

██ The question to witness King, "State whether or not this defendant purchased from you a coffin in which this girl was buried," was clearly immaterial; it had no bearing on the case, and the objection thereto was properly sustained, or in the ruling there was no error of which defendant may complain.

██ Upon motion of the solicitor, the court excluded the following statement because it was not responsive to the question asked: "Well, I don't believe he knows right from wrong." The question was: "You are going by the things he does, by the wrong things that he does?" The court was correct in its ruling; the answer was not responsive to the question.

██ The objections of defendant were to the testimony as to statements and acts of the defendant immediately following the commission of the crime. These were permissible on the question of insanity vel non, and were admitted by the court for this purpose, and so limited "whether he was unconscious just before the shooting."

██ Where, in a prosecution for homicide, defendant pleaded insanity, evidence of a police officer, who talked with defendant immediately after the homicide, that defendant "seemed all right," and that he "talked rationally," was admissible to show defendant's appearance, emotions, and the condition of his mind. Under a plea of insanity the issues of fact presented "give much latitude." Parrish v. State, 139 Ala. 16, 36 So. 1012; Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am. Rep. 193; Manning v. State, 217 Ala. 357, 116 So. 360; Anderson v. State, 209 Ala. 36, 39, 95 So. 171, and authorities cited; Parke v. Dennard, 218 Ala. 209, 118 So. 396; Sovereign Camp, W. O. W., v. Hoomes, 219 Ala. 563, 122 So. 686.

██ The objections of the defendant to the testimony of state witness McKinney, on rebuttal, were properly overruled. The defendant had testified of the ride; that he was afraid for the witness and the other girl to go to Leighton; that deceased asked him to pitch a party; and that the deceased was drinking.

"The state may examine a prosecuting witness as to facts tending to rebut the defendant's testimony," or reasonable tendencies thereof. Pritchett v. State, 18 Ala. App. 628, 93 So. 341.

The court gave an able and lengthy oral charge; no exception being taken thereto. The court also gave, at the instance of the defendant, many (thirty-two) written charges; and a like number of the defendant's written requests were refused.

██ Charge No. 5 was properly refused as it does not state a correct principle of law. The mere fact that one is not capable of rational action generally, does not render him irresponsible for his criminal acts, under the rule of our cases on insanity cited above. Moreover, the charge does not state the elements of the defense, and was an argument.

██ Charge No. 11 does not state a correct principle of law. However, the court gave several charges in this respect which cover the purpose of this charge—charges Nos. 2, 3, 4, 6, 7, 8, 9, and 10, under the decisions, Sharp v. State, 193 Ala. 22, 69 So. 122; Gilmer v. State, 181 Ala. 23, 61 So. 377; Heningburg v. State, 153 Ala. 13, 45 So. 246.

Charge No. 12 was properly refused. It is the affirmative instruction for the defendant which could not have been given under the evidence in this case and the rule of our decisions. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

■ ██ Charges Nos. 19, 20, and 22 were covered in the court's oral charge and in charges given at the request of the defendant.

██ Refused charge 25 was a supposition charge which is condemned. McCoy v. State, 170 Ala. 10, 54 So. 428.

██ Charges Nos. 30, 34, 35, 38, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, and 53 were properly refused on the ground that they all deal with the defense of self-defense when there is no evidence of self-defense; they were abstract.

██ Charge No. 33 is bad in that it does not refer to the evidence, and its refusal is justified. It does not state a correct principle of law, and there was verbal inaccuracy therein; and so of charge No. 52.

Charges A and B were covered in the court's oral charge.

Charge C is abstract, and is otherwise bad.·

Charge D was covered in the court's oral charge.

■ Conceding, without deciding, that charge 29 was correct, it was covered in given charge 26. Moreover, the court had properly instructed on the reasonable doubt which is more favorable to the defendant, Edwards v. State, 205 Ala. 160, ·87 Sò. 179; it pretermits reasonable doubt arising on consideration of the evidence, Jackson v. State, 209 Ala. 376, 96 So. 206; Jones v. State, 209 Ala. 655, 96 So. 867; Davidson v. State, 211 Ala. 471, 100 So. 641; Grubbs v. State, 213 Ala. 576, 105 So. 583.

We find no reversible error, and the judgment of the trial court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.

