14 So.2d 122

## COFFEY v. STATE.

### 8 Div. 193.

Supreme Court of Alabama.

June 3, 1943.

Rehearing Denied June 30, 1943.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

Proctor & Snodgrass, of Scottsboro, for appellant.

516

**LAWSON, Justice.**

The appellant was indicted for the murder of Dr. James W. Walker. He was convicted of murder in the first degree and was sentenced to suffer the death penalty. He interposed pleas of "not guilty" and "not guilty by reason of insanity."

■ That he killed Dr. James E. Walker is without contradiction in the evidence. The fact that the indictment stated the middle initial of deceased to be "W" whereas the proof showed it to be "E" is not material. The law knows but one Christian name and the insertion, omission, or misstatement of the middle name or initial of the defendant or the injured party in an indictment is immaterial. Pace and Cox v. State, 69 Ala. 231, 44 Am.Rep. 513.

The appellant at the time of the homicide was a comparatively uneducated cotton-mill worker about twenty-nine years of age. He is a married man and the father of two children, one of them a girl about nine years of age and the other a little boy about three years of age. The deceased was a practicing physician in Huntsville, Madison County, Alabama, who had been practicing in that locality for many years. The deceased had been administering to the appellant's small son, who had a broken leg, for two or three weeks prior to the time of the homicide.

The evidence shows without dispute that on Friday morning, March 6, 1942, the appellant left his home and went to the business section of Lincoln Village, a small community situated a few miles distant from Huntsville. He there purchased a pistol and ammunition from a man whom he had not previously known for the sum of $8, $5 of which he had borrowed from the operator of a store in that community. Within a short time after purchasing the pistol, he talked to the deceased over the telephone, requesting him to either meet appellant at his home or at the store from which the call was made. The appellant had been drinking during the morning, but there is no contention here made that the evidence shows him to have been drunk. After the call to Dr. Walker had been completed, the appellant remained in the store from which the call had been placed, from which point he saw Dr. Walker travelling in his automobile in the direction of appellant's home. John Coffey, a brother of appellant, was sitting in his car in front of the store at the time Dr. Walker passed. At the request of appellant, John drove him to his home. Dr. Walker had already arrived there and was in the house when appellant and his brother arrived. John Coffey remained in the car while the appellant went into the house, where he forced Dr. Walker at the point of the pistol to return to the car occupied by John Coffey. There he accused the deceased of having had intercourse with his wife and of having performed illegal operations (abortions) on her. Dr. Walker was on the back seat of the car, while the appellant was on the front seat with his brother. Within a short time the car with its three occupants proceeded to a point approximately 300 yards from the house, where the appellant continued to accuse the deceased of improper relations with his wife. While the appellant was directing the accusations at the deceased, he kept him covered with the pistol and when the deceased denied the accusations, the appellant attempted to hit him with the pistol whereupon the deceased knocked the pistol from appellant's hand, but was unable to prevent appellant from recovering it. Shortly thereafter the parties returned to the home of appellant. He forced Dr. Walker to again enter the house. After entering the kitchen, where they were joined by Victoria Coffey, the wife of appellant, and his aunt, Mrs. Tommie Coffey. The conversation or argument between appellant and Dr. Walker with reference to the alleged abortions and with reference to the charge of illicit relationship with appel-

lant's wife continued and finally reached a point where the appellant threw two skillets or frying pans at the deceased, both of which missed him. Appellant's wife and aunt implored him to discontinue his accusations and assaults upon the deceased, whereupon he fired one shot from the pistol, which struck Dr. Walker in the head, resulting in an injury from which he died two weeks later.

The appellant, although having entered a formal plea of "not guilty," testified in his own behalf and the facts as above related were admitted by him. The sole defense proposed by the evidence was that at the time the appellant committed the act he was insane. The appellant sought to trace his alleged insanity to the fact that he was laboring under the impression that the deceased had been unduly intimate with his wife. He testified that a short time before the day of the homicide his wife told him that the deceased had performed two abortions on her and that just two days before the date on which the fatal shooting occurred, he was present in the office of the deceased when the third abortion was performed; that he became suspicious of his wife and felt that the deceased would not have performed the illegal operations if he had not had illicit relations with his wife; that he had accused his wife of having an affair with the deceased but that she denied it; that he was so upset he could not sleep; that he and his wife were continually arguing about her relationship with the deceased; that he became moody, morose and intensely jealous.

The wife of appellant, testifying in his behalf, stated that on Sunday night some four or five days before the date of the homicide she admitted to her husband that the deceased had performed one abortion on her and that she told him at that time that it was necessary for another operation to be performed and that she intended to go to Dr. Walker within the next few days. She further testified that she did go to Dr. Walker on Wednesday, accompanied by her husband; that from the time she told her husband of the abortion he continued to accuse her of improper relations with the deceased. The evidence does not show, however, that she ever admitted having intercourse with the deceased. She stated that the appellant acted differently toward her after she told him about the illegal operation, having very little to say to her and seemed to have something "on his mind." On cross-examination this witness admitted that she made a statement on the day of the homicide relative to the conduct of her husband and her relationship with Dr. Walker. This statement, which was introduced in evidence, contains no reference to the fact that the witness had told her husband that the deceased had performed any illegal operations on her. It does show, however, that for about a week prior to the date on which the shooting occurred, appellant had tried to make his wife admit that Dr. Walker had made advances toward her but that she refused to admit any such conduct on his part because "he had always treated me like a lady, decent in every way."

Several witnesses testified to the effect that they had known the defendant for a long number of years and had had an opportunity to observe him immediately prior to the date of the homicide and that he appeared to have something on his mind; that he did not act right; that he looked like he was in a study about something; that he didn't work on his job like he ought to; that he would meet his friends in the street and not speak to them; that he seemed like he was restless and more nervous than he used to be.

The State, in rebuttal to this testimony, called a number of witnesses who also were closely associated with the appellant prior to the time of the homicide, who testified that the appellant appeared to be normal and that they had noticed nothing unusual about him.

The burden was on the appellant to prove, to the reasonable satisfaction of the jury, his plea of not guilty by reason of insanity. Parrish v. State, 139 Ala. 16, 36 So. 1012; Manning v. State, 217 Ala. 357, 116 So. 360; Boyle v. State, 229 Ala. 212, 154 So. 575; Section 422, Title 15, Code of Alabama 1940.

The rule of criminal responsibility under such a plea in this state was stated in the case of Parsons v. State, 81 Ala. 577, 2 So. 854, and has been adhered to by this court in many cases. It is well understood and need not be here repeated. Wilkes v. State, 215 Ala. 428, 110 So. 908; Anderson v. State, 209 Ala. 36, 95 So. 171; Hall v. State, 208 Ala. 199, 94 So. 59; Boyle v. State, supra.

The evidence as it relates to the plea of not guilty by reason of insanity falls

far short of establishing the fact that appellant's mind was so affected as to render him unaccountable for his act. While there was some evidence tending to show that appellant was not in all respects in his normal mind at the time of the homicide, no verdict in agreement with the great weight of the evidence could have found anything more to the point than an expression of emotional insanity, for which there is no recognition in the law of this state as an excuse for crime. Parsons v. State, supra; Wilkes v. State, supra; Manning v. State, supra.

Appellant strenuously insists that the trial court erred in permitting the State to introduce evidence of appellant's relationship with another woman. This evidence was admitted in rebuttal apparently on the theory that if the defense was made that defendant was temporarily insane at the time of the killing by reason of his belief that the deceased had been unduly intimate with his wife, it was proper to show his relationship with another woman as rebutting the inference to be drawn from his claim of insanity. The trial court admitted evidence showing that the appellant consorted with and kept a lewd woman; paid her bills.; bought her clothes; was the father of her illegitimate child; that he was so enamored of her that on one occasion he engaged in a fight with another man who was in her company.

This point does not seem to have been expressly dealt with in any decision of this court. However, it was presented in the recent case of Naugher v. State, 241 Ala. 91, 1 So.2d 294, 296, wherein it was held: "We have carefully examined the questions, objections and rulings of the trial court in the cross-examinations of defendant relative to his relations with one Jessie Webb of Piedmont, Alabama, together with a letter alleged to have been written to defendant by the said Jessie Webb, but it would serve no good purpose to discuss them in detail. Suffice it to say, we find no reversible error in them."

An examination of the original transcript in that case discloses that the trial court admitted the testimony offered by the state as to Naugher's relationship with the other woman on the theory that inasmuch as the defendant claimed that his knowledge of his wife's infidelity had produced insanity, it was proper to permit the state to show his own disregard for his marital status.

This question has been dealt with in other jurisdictions and the majority of the cases hold that such evidence is properly admitted. We quote from the case of Coffeen v. State, 22 Okl.Cr. 212, 210 P. 288, 290, as follows:

"* * * Moreover, to controvert the showing of the defendant that the intensity of the mental shock produced upon him by his wife's infidelity and the perfidy of his neighbor was such as to unseat his reason, the state, over the objections of the defendant, sought to prove, and in a measure did prove, specific conduct tending to show that the defendant himself may have been a rounder and a libertine. Facts were shown indicating that defendant's ideals of the sanctity of the home and the virtue of women were not so exalted as shown by defendant's testimony, and that therefore the shock to his mind and finer sensibilities could not be so very great—at least not so great as to unbalance his mind.

"The defendant claims that this class of testimony was incompetent and highly prejudicial. On this question we concede that, if this class of testimony was incompetent, it was highly prejudicial. The competency and relevancy of this kind of testimony under the circumstances here, it seems to us, is a mixed question of mental philosophy and law. In dealing with the philosophy of sex emotions there is danger of drifting into boundless uncertainties of theoretical speculation. With this danger in mind we will endeavor to keep within the bounds of reason. Suppose it had been shown that this defendant was a moral degenerate, in the habit of consorting with prostitutes and dissolute women, and that in the course of events he married one of them, who subsequently proved unfaithful to him; would it be likely that his discovery of her unfaithfulness would cause him to lose his mind and drive him insane? We think, in reason, that the shock would not be so great as it would to a man of refined sensibilities, having high conceptions of the sanctity of the home and the virtue of women.

"We have not been able to find an adjudicated case deciding this exact question, but there are authorities in which the principle here involved has been applied in a general way to specific acts of alleged insane persons. Wigmore on Evidence, vol. 1, § 228, says:

"'Sanity and insanity are terms applicable to the mode of operation of the mind as judged by some accepted standard of

normality. The mode of operation of the mind is ascertainable from the conduct of the person in question; i. e., from the effect produced by his surroundings on his mind when responding by action to those surroundings. Virtually, then, the mind is one, while the surroundings are multifold; and the mode of operation cannot be ascertained to be normal or abnormal except by watching the effects through a multifold series of causes. On the one hand, no single act can be of itself decisive; while, on the other hand, any act whatever may be significant to some extent. The first and fundamental rule, then, will be that any and all conduct of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue. "Upon this I believe that no difference of opinion will be found to exist," said Mr. Justice Patteson, in a celebrated case, "as to the principle upon which such evidence is admissible. Every act of the party's life is relevant to the issue. There can be no escape from this consequence. There is no distinction in kind (whatever there may be in degree) between one or another piece of conduct as evidence to be considered; some inference is always possible." [Wright v. Tatham, 5 C. & F. 670.] On the general principle of relevancy any piece of conduct offered as indicating insanity may be explained away as equally or more consistent with sanity.'

"Now, if the defendant be permitted to show that he possessed a highly sensitive moral mind and that some great shock probably brought on emotional insanity, why may not the state show, if it can, that the accused possessed no such character by showing that he had perverted sexual propensities, and that his moral sensibilities were blunted to such an extent as to make it improbable that the shock disturbed his mental equilibrium? In an early case decided in the United States Circuit Court, United States v. Holmes, Fed.Cas.No. 15,382, 1 Cliff. 98, Associate Justice Clifford of the United States Supreme Court said:

" 'Whenever * * * the accused' has offered his acts, conduct and declarations before and after the homicide, 'the government may offer evidence of other acts, conduct and declarations of the accused within the same period to show that he was sane, and to rebut the evidence introduced for the defense.'

\* \* \* \* \* \*

"The case of Tingley v. State, 16 Okl. Cr. 639, 184 P. 599, was a case in which the defendant testified that he believed that the deceased and his (defendant's) wife were intimate, that the deceased had invaded his home, and that partly by reason of such conduct defendant's reason was temporarily dethroned. The state, to rebut any presumption of insanity arising from such belief, introduced testimony tending to show that the defendant had failed to keep his own life pure and did not have so high a regard for the sanctity of the home as would cause the discovery of a wife's infidelity to dethrone the reason of a pure man. The court held that, whether this evidence was or was not proper rebuttal evidence, it was not prejudicial under the circumstances in that case, and stated that the question of whether it was proper rebuttal evidence was not necessary to a decision of that case, and, except inferentially, announced no rule of evidence governing such a situation.

"Since all the authorities hold that evidence in chief of specific facts and conduct showing that the accused may have been insane at the time of the commission of a homicide is admissible, we think there is no good reason why the state may not show facts and circumstances which tend in any way to rebut this inference. We hold, therefore, that under the peculiar circumstances here the court did not abuse his discretion in permitting the state to introduce evidence in rebuttal tending to show that the defendant's social life was not exemplary and in submitting it to the jury under the instructions given, for the purpose of counteracting the inference raised by defendant to the effect that the shock to his sensitive, refined, mind caused him to become temporarily insane, culminating in the homicide charged. There was ample evidence to support the verdict."

To like effect are the decisions in the cases hereinafter cited. Tapedo v. State, 34 Okl.Cr. 165, 245 P. 897; Ditmore v. State, 49 Okl.Cr. 228, 293 P. 581; State v. Herring, 118 S.C. 386, 110 S.E. 668; People v. Lane, 101 Cal. 513, 36 P. 16; Fray v. State, 46 Okl.Cr. 260, 285 P. 142; Wigmore on Evidence, Vol. 2, 3rd Edition, § 231.

We conclude, therefore, that the trial court did not commit reversible error in

admitting evidence of appellant's relationship with another woman.

Counsel who appear for the appellant in this court were not of counsel in the court below. They earnestly insist that the trial court committed reversible error in permitting the state to show certain acts on the part of the appellant committed in some instances many years prior to the time of the homicide, which they contend shed no light on the issues involved. The state on the cross-examination of the defendant asked the following question: "In 1933 did you assault and stab Solon Adcock?" Counsel for the defendant objected to the question on the ground that it called for incompetent, irrelevant, immaterial, illegal and inadmissible testimony and on the further ground that the issue inquired about had no bearing on any issue involved in the case and that it was not limited to the question of the sanity or insanity of the defendant, and on the further ground that the only purpose of said question was to elicit testimony to prejudice the jury against the defendant and that said act might have been done in self defense. The court overruled the said objection, to which action of the court the defendant reserved an exception. The defendant answered: "In self defense I did, it was throwed out of court. He didn't even appear against me. I cut the boy. He had a knife in his hand and I cut him." Whereupon the court made this statement: "To the objection on the ground that the assault and battery might have been justified, that is not an issue. The fact if it was justified or wasn't justified isn't the inquiry. It is as to what acts may have happened to this man during his lifetime as bearing or throwing any light upon the defense of not guilty by reason of insanity. Of course, if you set forth and prove that certain other acts bearing upon this man's conduct which might show that the assault and battery was justified or wasn't justified, of course, on the same theory that evidence would be admitted. That is the Court's idea of the evidence being offered."

In rebuttal the state called as a witness V. L. Walling, who testified that he had known the defendant for approximately a year and was associated with him in the fall of 1941 in the coal business; that he let the defendant use his truck with which to haul coal, for which he was compensated by the defendant; that after he terminated the relationship with him, the defendant, in a telephone conversation, told the witness, "G— d— you, I am going to kill you when I see you." This witness further testified that from his observation of the defendant, he was a very shrewd and exceptionally bright boy and was of sound mind. No objection was interposed to the questions eliciting the testimony of the witness. However, counsel then representing the defendant moved to exclude all the testimony of the witness except the part as to the sanity of the defendant. This motion was overruled and the defendant reserved an exception to that action of the court. It appears from the record that the theory upon which the court admitted this type of evidence was that all acts and declarations of a defendant are admissible under a plea of not guilty by reason of insanity as tending to prove that issue.

It is true that in the case of Howard v. State, 172 Ala. 402, 55 So. 255, 257, 34 L.R.A.,N.S. 990, this court held: "In inquiries as to sanity or insanity, it has been held that 'every act of the party's life is relevant to the issue.' 1 Greenl. on Ev. (16th Ed.) p. 58. So statements of the defendant, made after the homicide, are competent to show the condition of his mind. Braham v. State, 143 Ala. 28, 39, 38 So. 919. And, in general, his acts, declarations, and conduct. McCurry v. Hooper, 12 Ala. 823, 46 Am.Dec. 280."

The broad expression quoted above, however, has been modified, and we think properly so, in recent decisions of this court. In Mitchell v. Parker, 224 Ala. 149, 138 So. 832, 834, in treating the rule announced in the Howard case, this court said: "When the insanity, vel non of a person is involved in the issue submitted to the jury, a wide latitude is allowed in tracing the life record of the subject. In fact, it has been said that, on such an inquiry, 'Every act of the party's life is relevant to the issue.' Howard v. State, 172 Ala. 402, 55 So. 255, 257, 34 L.R.A.,N.S., 990. *Of course, this expression must be understood to carry the necessary limitation that the acts inquired about must throw some light upon the inquiry.*" (Emphasis supplied)

In the case of George v. State, 240 Ala. 632, 200 So. 602, 606, it was said: "Evidence to show insanity is not confined to evidence of the mental condition of the accused at the instant of the act, though what-

ever facts are adduced must tend to show the mental state at that moment."

The court's action in permitting the witness Walling to testify as to the telephone conversation which he had with the appellant is not properly presented here for review. However, objection was properly interposed to the question relating to the alleged assault by the appellant upon one Solon Adcock and exception duly reserved to the court's action in overruling the objection.

■ We must, therefore, determine whether or not such evidence was properly admitted in this case. As before stated, the appellant did not contend that he had been insane over a period of years, but his alleged insanity was traceable solely to appellant's belief that there was an illicit relationship between his wife and the deceased, which belief the evidence shows the appellant to have entertained for approximately one or two weeks prior to the homicide. We are unable to see how the fact that the appellant assaulted and cut another party in 1933, nine years prior to the date of the homicide, could shed any light on the issue raised by the insanity plea. Of course, such evidence was not admissible under the plea of "not guilty."

■ This appellant was on trial for his life and we are of the opinion that the court below committed reversible error in permitting the state to introduce in evidence the fact that the defendant, at a time far removed from the date of the homicide, assaulted another person, which act could have no possible tendency to prove the sanity of the defendant at the time of the homicide, and which act was in no way admissible under the plea of "not guilty." Nor do we think that it can be said that such evidence worked no injury to appellant.

The state, through its Attorney General, in contending that such evidence was admissible, relies upon the decision of this court in the case of Grammer v. State, 239 Ala. 633, 196 So. 268. In that case the defendant had interposed a plea of not guilty by reason of insanity. The wife of defendant testified for him, as tending to show insanity, that he cut one Deeton and that he and her father had had a shooting affair. The state was permitted on the cross-examination of defendant's wife in respect to his sanity, and limited to

that issue, to prove by her that the defendant had been sentenced to the penitentiary for assault with a weapon on account of the Deeton affair on September 5, 1933. The crime with which Grammer was charged was committed on August 3, 1937. This court held that the lower court did not err in allowing the state to make such proof on cross-examination on the ground that the issue of insanity gives much latitude to the defendant and the state to introduce evidence of defendant's acts, declarations and conduct prior and subsequent to the alleged crime. Anderson v. State, supra; Birchfield v. State, 217 Ala. 225, 115 So. 297; Deloney v. State, 225 Ala. 65, 142 So. 432.

We do not think the conclusion reached in the Grammer case, supra, is in any way in conflict with the conclusion here reached for the reason that in the Grammer case the evidence as to insanity tended to show that the defendant had been insane over a long period of time, including the time when he was convicted of the crime of assault with a weapon. The evidence introduced by the state was in rebuttal of that fact and tended to prove that when charged with the commission of the crime of an assault with a weapon he was sane and that he did not at that time claim to be insane.

We have examined closely the cases cited by this court in the Grammer case in support of the conclusion there reached, and while they all hold that much latitude is given to both the defendant and the state to introduce evidence which tends to prove either the sanity or insanity of defendant, none of them seem to uphold the contention here made by the state.

■ The appellant insists that the argument of counsel for the state in the court below was so prejudicial as to require a reversal of this cause. No objection was interposed to the argument of counsel for the state and the court's ruling thereon was not invoked. We do not believe that the argument was so prejudicial that it could not have been eradicated by the trial court and we, therefore, hold that no reversible error appears in that connection.

For the reason heretofore expressed, the judgment of the court below must be reversed.

Reversed and remanded.

All the Justices concur.