100 So.2d 733

James H. MOODY

v.

The STATE of Alabama.

6 Div. 150.

Supreme Court of Alabama.

Oct. 24, 1957.

Rehearing Denied March 6, 1958.

Matt Murphy, Jr., Birmingham, for appellant.

John Patterson, Atty. Gen., and Paul T. Gish, Jr., Asst. Atty. Gen., for the State.

**GOODWYN, Justice.**

James H. Moody, the appellant, was indicted in Jefferson County for murder in the first degree, the indictment charging that he "unlawfully, and with malice aforethought, killed James Harold Watkins by shooting him with a shotgun, against the peace and dignity of the State of Alabama." He interposed pleas of "not guilty" and "not guilty by reason of insanity". The jury returned a verdict of guilty of murder in the second degree and fixed his punishment at 50 years imprisonment in the penitentiary. Judgment and sentence were in accord with the verdict. There was no motion for a new trial.

Appellant was represented by counsel of his choice at his arraignment and on the trial. However, no brief has been filed on his behalf in this court; but that is not essential to our consideration of the appeal. Walker v. State, 265 Ala. 233, 234, 90 So.2d 221; Higginbotham v. State, 262 Ala. 236, 239, 78 So.2d 637; Payne v. State, 261 Ala. 397, 402, 74 So.2d 630; Johnson v. State, 257 Ala. 644, 645, 60 So.2d 818; Wesson v. State, 238 Ala. 399, 400, 191 So. 249. As said in Walker v. State, supra [265 Ala. 233, 90 So.2d 223]:

> "It has been said that § 389, Tit. 15, Code of 1940, when construed *in pari materia* with others, makes the right of appeal in criminal cases one of sub-

stance, imposing upon the Court a duty to search the record for errors."

This case arises out of the fatal shooting of appellant's 15-year old stepson about 2:00 A.M. on January 10, 1956. It appears that on the night of January 9, 1956, appellant and his wife (the mother of deceased) took an automobile trip from their home in Birmingham to Oneonta. The fatal shooting occurred at their home shortly after their return from the trip.

On February 27, 1956, the day set for trial of the cause, the trial court, pursuant to motion of appellant's attorney, and after an examination of appellant by a psychiatrist, entered an order committing appellant to the Alabama Insane Hospital. He was admitted to the hospital on February 28, 1956, and remained there until February 6, 1957, at which time he was released to the sheriff of Jefferson County who returned him to the Jefferson County jail. On March 1, 1957, appellant was again arraigned and his trial set for March 11, 1957.

The first witness called by the State was Mrs. Katherine Moody, appellant's wife and mother of the deceased boy. Before testifying she was informed by the trial judge that she could not be compelled to testify against her husband but could do so if she wished. She stated that she wanted to testify. During her cross-examination the following occurred:

> "Q. Now, Mrs. Moody, did you notice that your husband acted strangely at times, after you had married him back in 1954?
>
> "Mr. Deason: Wait a minute. Now, we object to that if the court please.
>
> "The Court: Yes, I will sustain the objection.
>
> "Mr. Murphy: We except on the ground that the Defendant has entered a plea of insanity.

"Q. Now, let me ask you this Mrs. Moody: You have seen people that have gotten out of their mind at times, haven't you?

"Mr. Deason: Now, we object to that if the court please.

"The Court: Yes, sustained.

"Mr. Murphy: We except.

"Q. Mrs. Moody, has your husband ever acted peculiarly in your presence?

"Mr. Deason: Don't answer that.

"The Court: Sustained.

"Mr. Deason: We object to that.

"The Court: Sustained.

"Mr. Murphy: We except.

"Q. Now, has your husband ever discussed with you the fact that his brother had tried to beat him out of some three or four thousand dollars up there in Gadsden?

"Mr. Deason: Don't answer that. We object to it.

"The Court: Sustained.

"Mr. Murphy: We except.

"Q. Mrs. Moody, have you ever— did you go down to the Insane Asylum to see Mr. Moody while he was down there—

"Mr. Deason: Don't answer that question-

"Q. —during the year that he was there?

"Mr. Deason: —don't answer that. We object to that.

"The Court: Sustained.

"Mr. Murphy: We except.

"Q. Now, Mrs. Moody, let me ask you this: You have seen people in your lifetime that have been insane and

who had delusions and who have suffered under paranoia and schizophrenia, have you not?

"Mr. Deason: Don't answer that, we object to that.

"The Court: Sustained.

"Mr. Murphy: We except.

"Q. Now, let me ask you this, Mrs. Moody: Did you know that your husband suffered from paranoia and schizophrenia?

"Mr. Deason: Don't answer that. We object to that if the court please.

"The Court: Sustained.

"Mr. Murphy: We except.

* * * * * *

"Q. Had he been accustomed to having violent fits at times?

"Mr. Deason: Don't answer that. We object to that.

"The Court: Yes, sustained.

"Mr. Murphy: We except.

"Q. Did he have a violent fit on this occasion when you all were going to Oneonta?

"Mr. Deason: Don't answer that. We object to it if the court please.

"The Court: Sustain the objection.

"Mr. Murphy: Note an exception to that.

"Q. Did he appear to be agitated and angry, or how did he appear on the way to Oneonta?

"Mr. Deason: We object to that.

"The Court: Yes, sustained in that form.

"Mr. Murphy: We except.

"Q. Now, had Mr. Moody gone to see a psychiatrist during the time you had been married to him, Mrs. Moody?

"Mr. Deason: Don't answer that. We object to that.

"The Court: Sustained.

"Mr. Murphy: We except."

There can be no doubt that the plea of insanity was seriously insisted upon and that the defendant's sanity vel non at the time of the homicide presented a question for the jury's determination. In this situation we are constrained to hold that the State's objections to the foregoing line of questions were not well-taken and that the rulings sustaining the State's objections constitute error to reverse. As said in Barbour v. State, 262 Ala. 297, 303, 78 So. 2d 328, 333

"It has long been held that 'wide latitude' is allowed both the defendant and the state in inquiries into a person's mental state when an issue as to the sanity of such person is presented. Peoples v. State, 257 Ala. 295, 299, 58 So.2d 599; Smith v. State, 257 Ala. 47, 49, 57 So.2d 513; Hall v. State, 248 Ala. 33, 36, 26 So.2d 566; Parvin v. State, 248 Ala. 74, 75, 26 So.2d 573; Eldridge v. State, 247 Ala. 153, 154, 22 So.2d 713; Coffey v. State, 244 Ala. 514, 521, 14 So.2d 122; George v. State, 240 Ala. 632, 637, 200 So. 602; Grammer v. State, 239 Ala. 633, 638, 196 So. 268; Brothers v. State, 236 Ala. 448, 451, 452, 183 So. 433; Deloney v. State, 225 Ala. 65, 70, 142 So. 432; Birchfield v. State, 217 Ala. 225, 228, 115 So. 297; Anderson v. State, 209 Ala. 36, 42, 95 So. 171; Russell v. State, 201 Ala. 572, 78 So. 916; Cawley v. State, 133 Ala. 128, 138, 32 So. 227; McLean v. State, 16 Ala. 672, 680. These inquiries, however, are subject to the necessary limitation that the acts, declarations and conduct inquired about must have a tendency to shed light on the accused's state of mind when the act for which he is being tried was committed. Smith v. State, supra; Parvin v. State, supra; Coffey v. State, supra; Mitchell v. Parker, 224 Ala. 149, 138 So. 832. And coupled with this limitation is the principle that the general range and scope of the inquiry should be left to the sound discretion of the trial court. Eldridge v. State, supra; Brothers v. State, supra; Odom v. State, 174 Ala. 4, 10, 56 So. 913.

"The 'wide latitude' rule is thus stated in Hall v. State, supra [248 Ala. 33, 26 So.2d 568]:

" 'But upon the question of insanity a wide range of evidence is allowable. "It has become a maxim of the law that in cases where insanity is relied upon as a defense, 'Every act of the party's life is relevant to the issue.' " Brothers v. State, 236 Ala. 448, 183 So. 433, 435.

" 'Of course as pointed out in Coffey v. State, 244 Ala. 514, 14 So.2d 122, this broad expression must be understood to carry the necessary limitation that the acts inquired about must throw some light upon the inquiry. The Coffey case furnishes an apt illustration of this limitation.

" 'And our decisions are uniform to the effect that the issue of insanity gives much latitude both to the defendant and the State, for the introduction of evidence of defendant's acts, declarations, and conduct, prior and subsequent to the alleged crime.' "

What was said in George v. State, 240 Ala. 632, 637, 200 So. 602, 606, supra, has particular significance in the case before us, viz.:

"The opinion of expert witnesses as to insanity are not conclusive upon the jury; they are to be weighed like other evidence, such evidence being intended to aid the jury, and its value depending largely upon the intelligence, experience, honesty and impartiality of the witness. The jury may reject it all, though it is without conflict. McAllister v. State, 17 Ala. 434, 52 Am.Dec.

180; Parrish v. State, 139 Ala. 16, 36 So. 1012.

"Evidence to show insanity is not confined to evidence of the mental condition of the accused at the instant of the act,· though whatever facts are adduced must tend to show the mental state at that moment. By outward acts we read the thoughts, the motives and the emotions, and as one's acts conform to the practices of people of sound mind or contrast therewith we ·form our judgment of sanity or insanity. Evidence is competent to prove conduct and language at various times and places indicating an unhealthy mental condition, and *the more extensive the view the safer is the determination reached.*" [Emphasis supplied.]

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.