127 So.2d 628

William **FILLMAN**

v.

**STATE.**

**I Div. 836.**

Court of Appeals of Alabama.

Nov. 29, 1960.

Rehearing Denied Jan. 10, 1961.

MacDonald Gallion, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

Wilters & Brantley, Bay Minette, for appellant.

CATES, Judge.

Fillman stands convicted of and has been sentenced to twenty years confinement for the second degree murder of his wife.

A State toxicologist, Mr. Nelson Grubbs, testified that, in his opinion, based on an autopsy, Mrs. Fillman died of loss of blood because her liver had been ruptured. Asked

if the damage could have been caused by a kick from a shod human foot, Mr. Grubbs replied, "It is possible."

Mr. J. M. Garrett, a policeman of the city of Fairhope, on May 24, 1959, at about 11:30 p. m., went to the Fillmans' home and was shown Mrs. Fillman's body lying across a bed.

Captain Fillman related the following account to the Chief of Police, the statement being preceded by proof of its freedom from illegal inducement:

"* * * He said he asked his wife to fix him some breakfast and she didn't move—just set there, and that he picked up a beer bottle and hit her over the head and he left and came back later and hit her over the head again with another beer bottle and he went up town and then * * * to the Legion and Elks Club and came back around 8:00 or 9:00 o'clock—he wasn't sure what time it was; that she was laying on the floor between the bath room and the kitchen; there was a little hall there and he ripped her clothes off of her trying to pull her into the bed room and he put her partly on the bed; he said that was around 9:00 o'clock; he told me he called Higgins Mortuary around 11:30 and as far as he knew she was dead—She was cold and didn't say anything to him and he thought she died because she had not been eating.

* * * * * *

"* * * he had just thought she was passed out drunk and he kicked her, * * * a couple of times in the chest and later on he brought her into the bed room."

From Mr. Garrett's cross-examination, we find:

"Q. Did he talk rational with you at that time?—Like we're talking back and forth to each other now? A. I would say yes and no.

"Q. Now did he seem to know at that time, or did he tell you at that time what happened? A. No sir, not right at that time; we didn't ask him right at that moment.

"Q. *Did he appear to you to know what happened?*

"Mr. Hendrix: I object to what he appeared—

"The Court—Sustain the objection." (Italics added.)

The italicized question has two parts: first, Garrett's observation, and, second, Fillman's manifestation (as Garrett noticed) of comprehension. The question does not admit of division of one part from the other. It asks Garrett to describe Fillman's appearance insofar as it might show or shed light on his knowing what had gone on around him or knowing what he might have done.

The Attorney General contends the question sought to have the witness testify "as to the mental attitude, condition or capacity of another," citing among other cases, Smarr v. State, 260 Ala. 30, 68 So.2d 6. The reference is to the portion of the Smarr opinion found at the top of the second column of page 35, at page 11 of 68 So.2d. However, that discussion is based on the rule as to a nonexpert's opinion of sanity, a question which is not here before us.

 Under a statutory plea of not guilty by reason of insanity, the range of enquiry is broad. Howard v. State, 172 Ala. 402, 55 So. 255, 34 L.R.A.,N.S., 990; Moody v. State, 267 Ala. 204, 100 So.2d 733.

The defense adduced excerpts from the log of the S. S. Margaret Walsh for March 28–April 5, 1959, covering the first leg of a voyage from Mobile to San Diego. Fillman was Chief Mate of the vessel. The entries in the log describe his conduct: (1) complaining of imaginary persons in the master's cabin; (2) as watch officer,

mistakenly believing the engines were idle while the ship was under way; (3) saying a woman was hiding in the smokestack; (4) searching the ship for his dog; and (5) hiding in the wheelhouse telling the skipper to turn out the light, "They are coming after me," and other similar hallucinations.

Fillman was locked up and put under guard until the Margaret Walsh touched Cristobal, C. Z., where he was taken to a hospital.

As we view the narrative, it portrays conduct from which a jury could have inferred that Fillman was insane.

■ Concededly, a witness cannot testify directly as to the mental operation of another: "The Devil himself knoweth not the thought of man." However, another's words and conduct may, when otherwise admissible, be related by a witness.

Judge McElroy, in his The Law of Evidence in Alabama (2d Ed.), § 128.08, says:

"A witness may not testify in terms as to what another person knew e. g., that another knew he was going to die (Delaney v. State, 148 Ala. 586, 42 So. 815), or that one person knew that another person had gone to Loachapoka to get a warrant (Bailey v. State, 107 Ala. 151, 18 So. 234, 235); nor may a witness testify in terms as to what another person saw (Hawkins v. State, 29 Ala.App. 221, 195 So. 762, syl. 5)."

From the opinion of Denson, J., in Delaney v. State, cited in the quotation above, we quote:

"* * * Furthermore, 'the mental status, the cognition of another, is not a fact. It is of necessity matter of opinion or conclusion, dependent on the facts from which the opinion is formed, or the conclusion drawn.' And while a witness, when it is proper to do so, may testify to his own mental status, yet he cannot testify that another knew or did not know a certain fact, but must detail the facts from which such conclusion is drawn. * * *" 148 Ala. at page 587, 42 So. at page 815.

■ The phenomena making up the conduct and demeanor of a person when described from the standpoint of an onlooker, if relevant to an issue, are admissible in evidence. Had the question tried to bring out what impression was being made on Fillman's mind, it would have been bad. However, here, we consider, was a question which sought to elicit Mr. Garrett's impression of what he saw of the physical appearance of the defendant, Fillman, insofar as Garrett's description might shed light for the jury in their determining Fillman's detachment from reality.

We consider there is no question here of the so-called Alabama rule of exclusion —i. e., of, on direct examination, testimony by the witness of his undisclosed mental state or uncommunicated motive as discussed in McGuff v. State, 248 Ala. 259, 27 So.2d 241.

In footnote 1 to § 1974, Wigmore appends twenty-nine Alabama cases (against four contra) admitting testimony on such "shorthand renditions of fact" as "sick," "angry," "afraid," "healthy," and the like. See also Hall v. State, 216 Ala. 336, 113 So. 64. To which might be added Hale v. Cox, 231 Ala. 22, 163 So. 335; Councill v. Mayhew, 172 Ala. 295, 55 So. 314; Parrish v. State, 139 Ala. 16, 36 So. 1012, and Deloney v. State, 225 Ala. 65, 142 So. 432.

In Hale v. Cox, supra [231 Ala. 22, 163 So. 337], a witness was asked (of the testator), "Tell * * * how that man appeared physically and how he appeared to you mentally, whether there had been any mental change in him or not, and if so what was it?" The answer was, "After he got through with that conversation he didn't understand what he had said."

The court, in upholding the trial judge's overruling objection to the question, said that the witness had not usurped the province of the jury. The opinion describes the answer as "giving the facts as to testator's physical and mental condition."

In Councill v. Mayhew, supra [172 Ala. 295, 55 So. 317], "Do you suppose your father knew what he was doing when he signed those checks?" was held to be unobjectionable.

In Parrish v. State, supra [139 Ala. 16, 36 So. 1022], the charge was murder and at issue was Parrish's lack of guilt because insane. We find: ·

"The objections to the statements of the witness that the defendant 'seemed all right,' that 'he talked rational,' etc., were . properly overruled. Such expressions were admissible under the rules .we have announced, and for the further reason that they were admissible to show the appearance, emotions and condition of the mind of the defendant. Gardner v. State, 96 Ala. 12, 11 South 402; Thornton v. State, 113 Ala. 43, 21 South 356."

We quote from Deloney v. State, supra [225 Ala. 65, 142 So. 436]:

"Where, in a prosecution for homicide, defendant pleaded insanity, evidence of a police officer, who talked with defendant immediately after the homicide, that defendant 'seemed all right,' and that he 'talked rationally,' was admissible to show defendant's appearance, emotions, and the condition of his mind. Under a plea of insanity 'the issues of fact presented 'give much latitude.' * * *"

In Moody v. State, supra [267 Ala. 204, 100 So.2d 734], the first question quoted in the opinion was, "* * * did you notice that your husband *acted strangely* at times * * *?" The third, "* * * has your husband ever *acted peculiarly* in your presence?" And the ninth was, "Did he appear to be agitated and angry, or how did he appear on the way to Oneonta?" (Italics added.)

And, as in the Moody case, the plea of insanity must, in our view, be considered as seriously insisted upon in the trial court as shown by the ship's log. Hence, in sustaining the prosecutor's objection, the court prejudiced a substantial right of the defendant, i. e., to present evidence concerning his sanity.

By analogy to the Moody case, the action was erroneous as well as injurious. The conjunction of error and harm require reversal.

On the State's objection, the court curtailed the reading of the ship's log to the jury. The Attorney General argues that there was no error in this since Terry v. Williams, 148 Ala. 468, 41 So. 804, shows that counsel might have read it in the course of argument.

In view of the importance of the contents of the log, we consider it would have been better practice to have allowed it all to have been read to the jury when it was introduced. The holding of Duke v. Cahawba Navigation Co., 10 Ala. 82 (first sentence of headnote 8), points strongly in that direction.

It was error to sustain the State's objection to the defense question put to Fillman, "Did she bruise easily?" This was vital to the refutation of the State's evidence. See Bluth v. State, 38 Ala.App. 692, 92 So.2d 685.

The judgment below is reversed and the cause remanded there for new trial.

Reversed and remanded.