## BIRCHFIELD v. STATE. (5 Div. 964.)

Supreme Court of Alabama. Jan. 26, 1928.

**1. Homicide ⬗338(3)—Admitting evidence regarding tracks near deceased's body by witnesses testifying that they saw two persons while making tracks, and describing them, held not prejudicial.**

In murder prosecution, where state's witnesses had testified they saw two parties crossing a field and going toward place where deceased's body was found and that one was larger than the other, permitting same witness to testify regarding tracks found next morning *held* not prejudicial.

**2. Homicide ⬗171(1)—Admitting evidence in murder prosecution that persons going in direction of place where homicide occurred were pushing each other held not error.**

In murder prosecution, permitting witnesses to testify that, when persons passed going in direction of swimming hole where homicide took place, they were pulling or pushing each other *held* not error, in view of subsequent evidence of confession of defendant that he forced or compelled deceased to go with him.

**3. Homicide ⬗174(6)—Permitting proof in murder prosecution that defendant had pistol on day after shooting in connection with his exhibition of pistol containing discharged chamber and his statement that he killed man held not error.**

In murder prosecution, permitting proof that defendant had pistol on day after shooting

in connection with his subsequent exhibition of pistol to certain witnesses containing discharged chamber and his further statement that he had used it in killing a man *held* not error.

**4. Criminal law ⬅➙531(3)—Evidence established sufficient predicate to render confessions in murder prosecution admissible as voluntary.**

In murder prosecution, evidence established sufficient predicate to show that confessions were voluntary and to make confessions admissible.

**5. Witnesses ⬅➙245—In murder prosecution, court's excluding question regarding what else defendant had stated regarding grudge, where witness had testified fully against deceased held not error.**

In murder prosecution, where state objected to a question regarding defendant's grudge against deceased, but witnesses answered fully, and defendant's counsel then asked, "What else did he say?" and court excluded evidence, ruling *held* not erroneous.

**6. Criminal law ⬅➙452(2)—Where defendant offered nonexpert evidence on question of sanity, state's witnesses, knowing defendant well and intimately, could give nonexpert opinions.**

In murder prosecution, where defendant had offered nonexpert evidence that he was insane, state's witnesses who knew defendant well and intimately could give their nonexpert opinions on subject.

**7. Criminal law ⬅➙354—Where insanity is defense to crime, much latitude is given both state and defendant regarding acts, conditions, and conduct of defendant.**

Where insanity is defense to crime, much latitude is given both to state and defendant as to acts, conditions, and conduct of defendant not only at time of offense, but prior and subsequent thereto.

**8. Criminal law ⬅➙720(9)—Refusal to exclude solicitor's argument that defendant charged with murder had pushed deceased across field and that there was evidence of kidnapping held not error.**

In prosecution for murder, in which there was evidence that two parties were seen crossing field toward place where deceased's body was found, and that one was pulling or pushing the other, refusal to exclude solicitor's argument that defendant "was pulling and pushing this boy (deceased) across field and there was evidence there of his kidnapping this boy" *held* not error.

**9. Criminal law ⬅➙778(7)—Instruction that persons charged with crime are presumed to be responsible for acts, and burden of proving otherwise is upon accused, held not error (Code 1923, § 4572).**

In murder prosecution in which defense was insanity, instruction, "Every person charged with crime is presumed to be responsible for his acts, and burden of proving that he is irresponsible is cast upon accused," *held* not error, since it conformed to Code 1923, § 4572, as to burden of proof.

**10. Criminal law ⬅➙778(7)—Instruction, in effect that establishment of insanity subsequent to commission of crime creates presumption it existed at time of crime, held properly refused.**

In murder prosecution in which defense was insanity, charge that, if jury were reasonably satisfied by preponderance of evidence that defendant was insane either before or after act in question was done, state of mind of defendant is presumed to have existed at time of commission of crime unless overcome by preponderance of evidence, *held* properly refused.

**11. Criminal law ⬅➙829(1)—Refusing charges covered by court's oral charge held not error.**

Refusing requested charges, whether in proper form or couched in proper language or not, which were fully and fairly covered by trial court's oral charge, *held* not error.

Appeal from Circuit Court, Chambers County; S. L. Brewer, Judge.

Johnnie Birchfield, alias Burchfield, was convicted of murder in the first degree, and he appeals. Affirmed in part, and remanded for proper sentence.

Defendant was charged with the killing of Howard Dudley by shooting him with a gun or pistol. The defense was not guilty and not guilty by reason of insanity.

The deceased was a boy of 15 years. Returning from school on the school truck, he debarked at a point about a quarter of a mile from his home, shortly before sundown on a Monday afternoon. His body was found the next morning between 7 and 7:30 o'clock, near a creek a mile and a half distant from the point where he alighted from the truck the evening before. His death, it appears, was caused by a bullet wound, the bullet entering through the ribs to the left of the end of the breastbone and lodging below the right shoulder blade. There was a place, some four feet around, near by the body, that had been "trampled around," where the grass was mashed down, and a trace chain lying close by.

The driver of the truck testified that deceased was wearing a cap, a red sweater, and overalls. State's witness Davis testified that on Monday afternoon he saw two parties crossing a field, coming from the direction of the big road and going toward the place where Dudley's body was found; that one was larger than the other; and that it looked to witness like one was pulling or pushing the other. Over defendant's objection, this witness was permitted to testify to having examined, the following morning, the tracks made by these parties; that "it looked like one was a large track; a man's track and a boy's track; they were wearing shoes; * * * the largest one was about a seven or eight, I reckon, and the other one, I suppose, was about a six, maybe;" and further

·to some peculiarities he noted about the tracks.

State's witness Mrs. Davis testified that she saw the two parties going across the field on the afternoon in question; that one wore a light colored suit and a tan or light brown sweater and a light cap, and that the smaller one wore a red sweater. Over defendant's objection, this witness testified that:

"They were just scuffling along a· little. * * * They were just pulling each other or pushing."

Another witness testified to having seen two parties cross the field, one larger than the other, the smaller wearing a red sweater, the larger dressed in lighter colored clothing, gray or tan.

Witnesses for the state testified that they saw defendant after dark on the Monday evening in question, and that he was trying to get some one to carry him in a car to his brother's, in Roanoke.

Witness Manley testified that he drove defendant to his sister's, in Roanoke, and saw a pistol in defendant's pocket.

Witness Birdsong testified that he saw defendant in the depot at Standing Rock (9 miles from Roanoke); ·that some others were present; that witness did not offer him any inducement, or hold out any hope of reward or make any threats to get him to talk; that defendant came in and said, "Let me sell one of you all a good gun"; that one of them said, "What do you want for it?" that defendant said "$6," and pulled the gun out of his hip pocket when witness saw an "empty hull"; that defendant said, "That's one time I shot too many, I killed a fellow yesterday evening;" that one boy asked where and defendant didn't say where, but said, "I had a chain, and started to throw him in the creek, and decided not to do it, and made him lay down, and shot him once in the heart;" that defendant further said, "He had been mad with this fellow 6 months, and every time he would see him the madder he got with him."

Witness Tatum testified that he, with three others, found defendant in a loft, about a quarter of a mile from the scene of the crime, and brought him to jail. Over defendant's objection he testified that neither of them, on the trip or anywhere else, held out any hope of reward or any inducements, made any threats or made any promises to the defendant to get him to talk; that defendant said, in substance, that he had forced deceased to go with him to the place where the body was found and had killed deceased because of an "old grudge." This witness testified that there were 12 or 15 persons present when defendant was taken, but that witness and 3 others carried defendant in a car to the jail.

Witness Lindsay, one of those in the car with Tatum, after predicate laid testified to the statement made by defendant.

Defendant's evidence tended to show that he was not of sound mind.

In his closing argument to the jury, the solicitor stated:

"He was pulling and pushing this boy across the field, and there was evidence there of his kidnapping this boy."

Defendant's objection to, and motion to exclude, this argument was overruled.

Charge 1, given for the state, is as follows:

"Every person charged with a crime is presumed to be responsible for his acts, and the burden of proving that he is irresponsible is cast upon the accused."

Charge 6, refused to defendant, is as follows:

"I charge you, gentlemen of the jury, that if you are reasonably satisfied by a preponderance of the evidence that the defendant was insane either before or after the act in question was done, that state of mind of the defendant is presumed to exist at the time of the commission of the crime unless overcome by a preponderance of the evidence."

Will O. Walton, of Lafayette, for appellant.

Evidence of a pistol defendant had the day after the alleged crime was erroneously admitted. Williams v. State, 147 Ala. 10, 41 So. 992; Morris v. State, 146 Ala. 66, 41 So. 274; Sanford v. State, 2 Ala. App. 81, 57 So. 134; Hickman v. State, 12 Ala. App. 22, 67 So. 775; Thomas v. State, 18 Ala. App. 268, 90 So. 878; Anderson v. State, 209 Ala. 36, 95 So. 171; Aplin v. State, 19 Ala. App. 604, 99 So. 734; Williams v. State, 20 Ala. App. 257, 101 So. 367. Evidence of a confession made by defendant while in the hands of a posse should not have been admitted. Cook v. State, 16 Ala. App. 390, 78 So. 306; Curry v. State, 203 Ala. 239, 82 So. 489; Carr v. State, 17 Ala. App. 539, 85 So. 852. What defendant said six or eight months before the tragedy was admissible as throwing light on his sanity. Odom v. State, 174 Ala. 4, 56 So. 913; McAllister v. State, 17 Ala. 434, 52 Am. Dec. 180; Gardner v. State, 96 Ala. 12, 11 So. 402; Winford v. State, 16 Ala. App. 143, 75 So. 819; Howard v. State, 172 Ala. 402, 55 So. 255, 34 L. R. A. (N. S.) 990; Anderson v. State, 209 Ala. 36, 95 So. 171; 1 Greenl. on Evi. (16th Ed.) 58. In order for a nonexpert to testify as to sanity, he must have had acquaintance of such duration and intimacy to enable him to form a reasonably accurate and trustworthy opinion. Stuckey v. Bellah, 41 Ala. 700; Ford v. State, 71 Ala. 385; Powell v. State, 25 Ala. 21; Norris v. State, 16 Ala. 776; Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am. Rep. 193; Parish v. State, 139 Ala. 16, 36 So. 1012; 2 Greenl. on Evi. § 372. There was no evidence of kidnapping, and the argument of the solicitor was improper and prejudicial. Allen v. State, 19 Ala. App. 302, 97 So. 165; Gray v. State, 19 Ala. App. 550,

98 So. 818; Carmichael v. State, 197 Ala. 185, 72 So. 405; McDaniel v. State, 20 Ala. App. 407, 102 So. 788; Rowe v. State, 20 Ala. App. 119, 101 So. 91. Defendant's charge 6 was erroneously refused. Gardner v. State, 96 Ala. 12, 11 So. 402; Odom v. State, 174 Ala. 4, 56 So. 913; McAllister v. State, 17 Ala. 434, 52 Am. Dec. 180; Murphee v. Senn, 107 Ala. 424, 18 So. 264; Boswell v. State, 63 Ala. 307, 35 Am. Rep. 20; Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am. Rep. 193.

Charlie C. McCall, Atty. Gen., and W. M. Rayburn, Asst. Atty. Gen., for the State.

Testimony as to footprints was entirely competent and proper. Young v. State, 68 Ala. 575; Campbell v. State, 23 Ala. 44; 14 Cent. Dig. Cr. Law, § 768. The confession, being shown voluntary, was admissible. Young & Griffin v. State, 68 Ala. 569. Rulings on admissibility of evidence as to defendant's sanity were without error. Russell v. State, 201 Ala. 572, 78 So. 916; Smith v. State, 182 Ala. 38, 62 So. 184; Jones v. State, 181 Ala. 63, 61 So. 434; 30 C. J. 220. The argument of the solicitor was within legitimate bounds. Chambers v. State, 84 So. 638[1]; Cross v. State, 68 Ala. 476; Du Bose v. State, 148 Ala. 560, 42 So. 862. It is no error to refuse charges on subjects already fully covered by given charges. Miller v. State, 110 Ala. 69, 20 So. 392; Murphy v. State, 108 Ala. 10, 18 So. 557; Sills v. State, 2 Ala. App. 73, 57 So. 89.

ANDERSON, C. J. [1] We are at a loss to understand the purpose of the state in showing the existence of tracks and the size of same by the witnesses who had actually seen the two persons while making the tracks and had fully described them, and who must have made tracks as they went along, and one of whom was described as larger than the other. On the other hand, this evidence could not have been prejudicial to the defendant as it was but a method to establish a fact, in a secondary sense, which had already been established by the best undisputed evidence.

[2, 3] There was no error in permitting the witnesses to testify that when the persons passed going in the same direction of the swimming hole, where the homicide took place, they were "pulling or pushing each other," in view of the subsequent evidence of the confession of the defendant that he forced or compelled the deceased to go with him. Nor was there error in permitting proof that defendant had a pistol the day after the shooting in connection with his subsequent exhibition of a pistol to certain witnesses containing a discharged chamber, and the further statement that he had used it in killing a man.

[4] We think a sufficient predicate was established to show that the confessions were voluntary. True, the last one was made when

[1] 17 Ala. App. 178.

the defendant was captured or arrested or when being taken to jail, but the evidence clearly shows that they were not obtained by threats, promises, or inducements. There is nothing in the case of Curry v. State, 203 Ala. 239, 82 So. 489, that would render the confessions in this case inadmissible.

[5] It is difficult to tell just what was included in the objection and ruling of the trial court on page 38 of the record in the testimony of W. F. Birchfield. The state objected to the question as to the grudge against the Dudley boy, but the witnesses answered fully. Defendant's counsel then asked, "What else did he say." The court: "Wait a minute. I don't think that is competent." And the defendant excepted. We can hardly put the trial court in error to the statement as to such a general question.

[6, 7] We do not think the trial court erred in permitting the state's witnesses to give their opinion as to the defendant's sanity. The defendant had offered evidence, nonexpert evidence, that he was insane, therefore the state's witnesses who knew him well and intimately could give their nonexpert opinion on the subject. Pritchard v. Fowler, 171 Ala. 662, 55 So. 147. True, one or two of these witnesses admitted that their association with the defendant was not as frequent or intimate during the year preceding the homicide as in previous years. Where insanity is a defense to crime, much latitude is given both to the state and defendant as to acts, conditions, and conduct not only at the time of the offense, but prior and subsequent thereto. Russell v. State, 201 Ala. 572, 78 So. 916.

[8] There was no error in not excluding the argument of the solicitor to which an objection and exception were reserved.

[9] There was no error in giving charge 1 at the request of the state. It conformed to the statute as to the burden of proof. Section 4572 of the Code of 1923.

[10] There was no error in refusing the defendant's requested charge 6. If not otherwise faulty, it instructs that the establishment of insanity subsequent to the commission of crime creates a presumption that it existed at the time the crime was committed. It is a rule of law that where permanent, as distinguished from temporary or spasmodic, insanity is established, it is presumed to continue, but we know of no rule making the establishment of insanity, permanent or temporary, a presumption that the party was insane prior thereto.

[11] The other charges requested by the defendant, whether in proper form or couched in proper language, or not, were fully and fairly covered by the oral charge of the trial court.

The judgment of the circuit court is affirmed except as to the sentence. The defendant was sentenced to death by hanging, but the time has expired and the method of imposing the death penalty is now by electro-

cution, and the cause is remanded in order that the trial court may resentence the defendant in conformity with the present statute. Leonard v. State, ante, p. 60, 114 So. 798; Bachelor v. State, 216 Ala. 356, 113 So. 67; Hall v. State, 216 Ala. 336, 113 So. 64.

Affirmed in part and remanded.

All the Justices concur.