30 So.2d 19

**GRISSOM v. STATE.**

8 Div. 475.

Court of Appeals of Alabama.

Jan. 7, 1947.

Rehearing Denied Feb. 25, 1947.

24

Jas. E. Smith, Jr., of Tuscumbia, for appellant.

Wm. N. McQueen, Atty. Gen., and Jas. T. Hardin, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

The appellant was indicted for murder in the first degree. She was by a jury found guilty of murder in the second degree and her punishment fixed at imprisonment in the penitentiary for a term of ten years.

At her trial below the appellant pleaded not guilty, and not guilty by reason of insanity.

On May, 14, 1943 the appellant, the deceased, Mrs. Ida Collier, and some six or seven other persons, including the daughters of the deceased were in a field in Col-

bert County chopping cotton. They had just reassembled after the noon recess. The appellant had been in the field before noon, but had not engaged in chopping cotton. During the noon recess the appellant had gone to her house, a short distance away, changed from the dress she was wearing in the morning and returned to the field wearing overalls. Shortly after her return, and when only a few feet from Mrs. Collier she suddenly pulled a pistol and fired twice at Mrs. Collier. One of the bullets wounded Mrs. Collier in the left arm, and the other penetrated her left side, entered the spine and severed the cord. Mrs. Collier was as a result of the spinal cord injury paralyzed from the waist down. She lingered until August 6, 1943, when she died of hypostatic pneumonia. Dr. R. D. Wright, her attending physician, testified that the primary cause of her death was the gunshot wound.

Under the provisions of Section 425, Title 15, Code of Alabama, 1940, the appellant was admitted to Bryce Hospital on October 16, 1943 for observation by an Sanity Commission as provided by said act.

This commission, composed of Dr. W. D. Partlow, Superintendent of the Bryce Hospital, Dr. W. M. Faulk, Assistant Superintendent, and Dr. F. A. Kay, Assistant Physician, rendered its report on May 16, 1944. It was the opinion of the commissioners, separately and jointly, that Mrs. Grissom "is constitutionally subnormal mentally to some extent, but in addition to this deficiency it is our opinion that she has suffered of a paranoid psychosis or paranoid condition, which together with her weak mentality caused her to be inherently suspicious, and that upon a basis of this mental condition she developed distinct delusions relative to the conduct of her husband and the woman she murdered. It is our opinion that the criminal act was directly due to the suspicions and delusions which caused her to feel jealous and bitter toward the woman she killed.

"We are of the opinion that the above described mental condition existed at the time Mrs. Grissom was admitted to the hospital, and in a large measure has existed ever since, though we are able to observe that supervision and regulation here in the institution under a different environment has had a beneficial effect. As she is now we would judge her probably able to return and stand her trial in court, though no one would be able to predict whether or not returning to the same environment she came from at her home might stimulate similar delusions, apprehensions, feelings and resentment toward her husband and toward any other woman who might be in any way associated in the community.

"While we are unable to state positively an opinion of Mrs. Grissom's condition prior to her admission to The Bryce Hospital, yet from the history of her case and from a general knowledge of such mental condition as above described in her case, we are of the opinion that her mental condition was substantially the same when the crime was committed as when she was admitted to the hospital, or as described in the third paragraph above."

Upon receipt of said report the appellant was returned to the Colbert County jail to await trial.

■ In this state, when a defendant interposes a plea of not guilty by reason of insanity the burden is on him to establish the issue of legal insanity, raised by his plea, by a preponderance of the evidence. He must establish by a preponderance of the evidence to the satisfaction of the jury that he was affected with a mental condition when the crime was committed which either prevented a knowledge of right or wrong as applied to the particular crime, or which destroyed his power of choice. Section 422, Title 15, Code of Alabama 1940; Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193; Lide v. State, 133 Ala. 43, 31 So. 953; Boyle v. State, 229 Ala. 212, 154 So. 575; Lee v. State, 246 Ala. 343, 20 So. 2d 471.

To sustain the burden of the issue of insanity raised by her plea the appellant introduced in evidence the testimony of Drs. Partlow and Kay, taken by deposition, and with the consent of the solicitor the report of the Sanity Commission was received in evidence. The appellant also introduced some eight or nine lay witnesses to testify on this issue.

In their interrogatories the doctors above mentioned made the same diagnosis of the

mental condition of Mrs. Grissom as that set out in the report of the Sanity Commission.

In answers to the cross-interrogatories propounded by the state, Dr. Partlow was of the opinion that on the date of the crime Mrs. Grissom "in an inferior way knew right from wrong, but was influenced in her acts by delusions of persecution."

In his interrogatory Dr. Kay stated that it was his opinion that on May 14, 1943 (the date of the killing) Mrs. Grissom, "because of her paranoid condition, was influenced in her behavior by her delusions of persecution and abnormal jealousy to the extent that she could not refrain from wrong." However in his answers to the state's cross-interrogatory this witness stated that on that date Mrs. Grissom "probably knew right from wrong," and in answer to the question: "Was the alleged crime, that is the unlawful shooting and killing of another woman, so connected with such mental disease of the Defendant in the relation of cause and effect as to have been the product of it solely?" he answered "Essentially yes."

The testimony of the lay witnesses introduced by the defendant was to the effect that Mrs. Grissom often went into fits of rage and anger, directed toward her husband because of his affairs with other women with which she charged him without foundation; that she was often forgetful, and would leave seasoning out of food she was preparing, or let the fire in the stove go out; that she on several occasions "ran away" from her home, etc.

The state's evidence rebutting the issue of insanity of appellant consisted of the testimony of some seven or eight lay witnesses. These lay witnesses like those of the state, were persons who had known the appellant well for a long number of years. According to these witnesses the appellant attended to her farm and domestic chores in a normal manner, kept simple accounts of the amounts due cotton pickers on the farm on which she and her husband resided, and in general conducted herself in normal fashion.

■ Whether a lay witness is sufficiently qualified by acquaintance, associa-tion, and opportunity of observation of a defendant to give opinion evidence as to the defendant's sanity is a question addressed primarily to the sound discretion of the trial court, and an appellate court should not disturb the rulings of the trial court on such question unless there is a palpable abuse of discretion on the part of the trial court. Moye v. State, 12 Ala.App. 127, 67 So. 716; Jones v. State, 181 Ala. 63, 61 So. 434; Odom v. State, 174 Ala. 4, 56 So. 913, 915; Bass v. State, 219 Ala. 282, 122 So. 45. Evidence of any abuse of such discretion on the part of the trial court is lacking in this case.

■ The verdict of the jury indicates that the appellant failed to establish her plea of insanity to the satisfaction of the jury. Their verdict was not unwarranted, even though it was the opinion of the expert medical witnesses that appellant was suffering from a paranoic condition at the time of the commission of the offense. Lee v. State, supra.

■ Consonant with our duty we have carefully examined this entire record for error. The trial court's ruling was invoked a number of times in reference to the admission or exclusion of certain testimony. In no instance have we detected any irregularity in the rulings sufficient to justify a discussion. The court was liberal in admitting testimony touching on the question of appellant's sanity. This was proper. The background of our decisions clearly reflects an attitude of liberality of evidence in inquiries into a person's mental capacity. Russell v. State, 201 Ala. 572, 78 So. 916; Anderson v. State, 209 Ala. 36, 95 So. 171; Birchfield v. State, 217 Ala. 225, 115 So. 297; Deloney v. State, 225 Ala. 65, 142 So. 432; Grammer v. State, 239 Ala. 633, 196 So. 268; George v. State, 240 Ala. 632, 200 So. 602; Naugher v. State, 241 Ala. 91, 1 So.2d 294.

The court's oral charge to the jury covered in a clear, accurate, and competent manner all the legal principles involved in this trial. No written charges were requested by the appellant in the trial below, nor was any motion for a new trial made. In our opinion the record is free from error materially affecting the substantial rights

of the appellant and this cause is due to be affirmed. It is so ordered.

Affirmed.

### On Rehearing.

In support of his application for a rehearing counsel for the appellant urges four propositions for our consideration.

The first is that the trial court erred in sustaining the State's objections to certain questions propounded on cross-examination to the witness Guy Grissom, a kinsman by marriage to the appellant, who had testified on direct examination that in his opinion the appellant was sane at the time of the commission of this offense. Pertaining to this proposition the record shows the following:

"Q. I will ask you as a matter of fact, if you heard rumors there in the community that this defendant here accused Elbert Grissom of having relations with your wife?

"The State objects. Objection sustained. The defendant excepts.

"Q. Guy, if this woman, this defendant, here, had told such things about your wife, would your feeling be good or bad?

"The State objects on the ground it is illegal, irrelevant and immaterial. Objection sustained. The defendant reserves an exception to the ruling of the court.

"Q. Guy, as a matter of fact, this woman here (indicating the defendant) did make that statement, and the statement got back to you, that Elbert Grissom had been fooling with your wife, isn't that right?

"The State objects on the same grounds heretofore assigned. Objection overruled. By the Court: I will let you answer that. A. That statement never did come to me that he was.

"Q. I didn't mean it was true, I mean you heard she made that statement?

"By the Court: The question is, as I understand it—Did you hear this defendant make that statement?

"By Mr. Smith: No sir. (Mr. Smith at this point had the Court Reporter read the question back.) Q. Guy, as a matter of fact, this woman here did make that state-ment, and the statement got back to you, that Elbert Grissom had been fooling with your wife, isn't that right?

"The State renews its objection. Objection sustained. The defendant excepts.

"By Mr. Smith: If the statement came to him that he did make it, then it would have caused the ill will of this defendant.

"Objection sustained by the court. The defendant reserves an exception.

"Q. Did you hear that rumor?

"The State objects on the ground it would be hearsay, and on the further grounds it is illegal, irrelevant and immaterial. Objection sustained. The defendant reserves an exception."

It is noted from the above excerpt from the record that the court overruled the State's objection to the question "Guy, as a matter of fact, this woman here (indicating the defendant) did make that statement, and the statement got back to you, that Elbert Grissom had been fooling with your wife, isn't that right?" Thereupon the witness answered: "That statement never did come to me that he was."

We of course recognize the established rule that it is error for a trial court to deny to a party full right to cross-examine a hostile witness as to any facts which would tend to show bias or ill will on the part of the witness toward the interested party. Pelham v. State, 22 Ala.App. 529, 117 So. 497; Ham v. State, 21 Ala.App. 103, 105 So. 390; Motley v. State, 207 Ala. 640, 93 So. 508, 27 A.L.R. 276; Vinson v. State, 247 Ala. 22, 22 So.2d. 344.

However, on appeal in criminal cases all legitimate and fair presumptions will be indulged in favor of the ruling of the lower court. Green v. State, 73 Ala. 26; Garrett v. State, 97 Ala. 18, 14 So. 327; Farrior v. State, 12 Ala.App. 123, 67 So. 633; McKenney v. State, 17 Ala.App. 117, 82 So. 565.

In our opinion the question which the court permitted the witness Grissom to answer substantially covered the preceding questions to which objections had been sustained. We think it can be fairly presumed from the witness' answer that he had not heard of the statement concerning his wife's

conduct allegedly made by Mrs. Grissom either by rumor or otherwise, and that the court's action in admitting such answer cured any error that might have resulted from his previous rulings to the preceding questions along this line. The questions following the answer were in our opinion repetitions of the question to which the objection had been overruled by the court and consequently afford no grounds for predicating error thereon. See Ala.Dig., Witnesses, ☜245.

For his second proposition appellant's counsel contends that the trial court erred in sustaining the State's objection to the following questions propounded on cross-examination to the lay witness Manuel Cross who had testified on direct examination that in his opinion the appellant was sane:

"Q. Well, I will ask you this. If as a matter of fact, a woman fussed with her husband and accused him of numbers of women and on several occasions ran away from home in the night time and hid and wouldn't come home, and was continually nagging at her husband about other women, would you say that was a normal woman or abnormal?

"The State objects. Objection sustained. The defendant reserves an exception.

"Q. I will ask you this. If the proof were to show this defendant on several occasions ran away from her home at night time and the neighbors had to be called in to go find her, and when they went to get her and tried to take her back home, she fought them and threw dirt in their face, and on numerous occasions accused her husband of having relations with several women there in the community, and if the proof showed she was continually nagging at her husband about other women and she wouldn't let him go to church and when he attempted to go to church she would hide his shirt and wouldn't let him go to the baptizing, would you say that would be a woman who was normal or abnormal?

"The State objects. Objection sustained. The defendant reserved an exception to the ruling of the court."

The two above questions are essentially hypothetical in character. "A nonexpert witness cannot give an opinion except when it is derived from facts known to him and disclosed by him to the jury. A hypothetical state of facts is, therefore, not an allowable basis for the opinion of a nonexpert." Ragland v. State, 125 Ala. 12, 27 So. 983, 986, and cases therein cited. The reason for the above rule is that the hypothetical form of presentation is proper only when the testifying witness possesses superior knowledge and skill in drawing inferences from certain premises. A lay witness giving his opinion as to the sanity or insanity of a defendant must first have testified as to the premises on which he bases his opinion. The jury is then in position to weigh the creditability to be attached to such opinion. See Wigmore on Evidence, Section 679.

The third proposition argued by appellant's counsel is that the trial court's remarks concerning the reception in evidence of the report of the lunacy commission, after having sustained the State's objection to the reception of the report in evidence when offered previously, so prejudiced the jury as to the efficacy of such piece of evidence as to substantially injure him. The record shows that when appellant for the third time offered the report in evidence, his two prior efforts having met with sustained objections from the State, the court said:

"By the Court: My judgment is that there is nothing to be gained by excluding the report. Of course, if the defendant was objecting to the offering of it, and it was erroneous, it would cause a reversal of the case. But where the defendant himself is insisting upon the introduction of it, I don't see where the State is gaining anything by insisting that it is kept from the jury. And if it was left to me, regardless of whether it was legal evidence or not, I would admit it, because I see nothing to be gained by keeping from the jury certificates of our public officers.

"At this time the State withdraws its objection to the introduction of the report of the lunacy commission."

The fact that the report was received in evidence obviates any consideration as to whether it was properly received, and we express no opinion as to such ques-

tion. We fail to find in the expressions of the court tending to encourage the withdrawal of the State's objection to the admission of the report in evidence any matter prejudicial to appellant's cause.

The fourth and last proposition put forward by appellant is that the trial court erred in its ruling on objections as to certain questions set out in the brief. In our opinion no error justifying a reversal of this case resulted from these rulings.

■ No error resulted to appellant because of the action of the court in sustaining the State's objection to the following question propounded to the State witness Pauline Collier on cross-examination:

"Q. Had Mrs. Grissom (appellant) and your mother (deceased) had several fusses about your mother riding in the cab or truck * * * ? "

The record shows that immediately following the above ruling this witness testified that Mrs. Grissom and the deceased had never had but one fuss, and that was on the Friday preceding the shooting. In our opinion this testimony cured any error, if there was error, that may have resulted from the above ruling by the court. No effort was made to show the cause of this single quarrel mentioned in the testimony of Pauline Collier. King v. State, 23 Ala.App. 572, 129 So. 316; Brewer v. State, 16 Ala. App. 501, 79 So. 199.

■ Likewise, the lower court was correct in sustaining the State's objection to the following questions propounded on re-cross-examination to State's witness Doug Cornelious:

"Q. You young people had a good time picking at this woman didn't you in order to get her to fuss right easy didn't you?

"The State objects on the ground that is a matter between the third party and not a matter between this defendant. The court sustained the objection. The defendant excepts.

"Q. I will ask you this young fellow, if you all wouldn't sing this song about going to Hollywood and getting you a woman or man for the purpose of starting a fuss?

"The State objects. Objection sustained. The defendant excepts."

Both questions called for testimony requiring mental operations of the witness.

Mrs. Grace Spangler was introduced as a witness for the appellant to testify as to appellant's mental condition. Mrs. Spangler had known appellant for most of her life and at one time had taught appellant in grade school. Mrs. Spangler testified in detail as to many abnormal acts of appellant observed by her and expressed the opinion that appellant was of "abnormal mentality."

Mrs. Spangler testified that at one time about thirteen years before the trial that after being sent for she went to appellant's home and found her in bed, and that at that time appellant kept saying "They don't treat me right."

The purpose of Mrs. Spangler's visit was to take appellant to jail, but instead she turned appellant over to her (appellant's) sister.

Mrs. Spangler was asked by appellant's counsel: "Do you know whether or not at that time whether papers had been procured to send her to the insane asylum?"

The court sustained the State's objection to this question.

■ In our opinion no error resulted to the appellant by such action of the court.

There is no evidence in the record that this appellant was ever committed to the asylum at any time prior to the commission of the offense for which she was convicted in this case.

Section 210, Title 45, Code of Alabama 1940, sets out the procedure in the Probate Court for obtaining a certificate from such court for the admission of a patient to a State insane hospital. The certificate of the court merely certifies that it has been satisfactorily shown to the court that the patient is so defective mentally that he or she ought to be committed to the hospital for insane persons for safe-keeping and treatment.

Such certificate in no way attests the patients legal responsibility for criminal acts. It has no probative force in such determination. Mrs. Spangler had testified in detail as to the abnormal acts on which she based her opinion as to appellant's mental condition. We cannot see any relevancy or pro-

**30**

bative force in the fact as to whether she knew that "papers" had been procured to have appellant committed to an asylum in determining vel non the mental condition of Mrs. Grissom. The proceedings prescribed in Section 210, Title 45, supra, for obtaining the certificate of mental disqualifications are ex parte in nature. The institution of such proceedings is the acts of other parties, not of the appellant. They may or may not be meritorious. Testimony as to the institution of such proceedings, or the procurement of "papers" looking toward the admission of appellant to a hospital for the insane for custody and treatment being purely ex parte was properly rejected as res inter alios acta. Frederic v. Wilkins, 182 Ala. 343, 62 So. 518.

For the same reason, and also because of its indefinite character, the trial court did not err in sustaining the State's objection to the questions propounded by appellant on direct examination to her witness Walter Grissom as to whether "any arrangements" were made to send appellant to Bryce's Hospital at the time referred to in Mrs. Spangler's testimony.

Application overruled.