SHORES, Justice.
This is an appeal by the defendant, Honeywell, Inc. (hereinafter “Honeywell”), from the denial of its motion for a judgment notwithstanding the verdict, or, alternatively, for a new trial.
The ease arose from the mechanical failure of an air conditioning unit owned by the plaintiff, Bel Air Corporation (hereinafter “Bel Air”). Under a service agreement with Bel Air, Honeywell maintained and serviced the unit, which is located atop the Sears, Roebuck & Company store at Bel Air Mall. The contract contained the following pertinent provisions:
“I. PLANNED PREVENTATIVE MAINTENANCE
“Planned preventative maintenance calls shall include the following services as required and applicable to keep your system operating properly:
“Check performance of all components.
“Examine, adjust, calibrate, lubricate, and clean all system components including:
1. Thermostats
2. Humidity controls
3. Temperature controls
4. Pressure controls
5. Automatic controls
6. Relays
[[Image here]]
24. Capacity and safety devices which control the equipment.
27. Boiler and temperature controllers.”
Although the service agreement excluded certain items from coverage under the flat contract price, the evidence at trial indicated that Honeywell performed necessary maintenance on all components of the unit, and those services not covered by the agreement were simply invoiced to Bel Air by Honeywell.
In December 1981, the air conditioning unit failed, with the result that the stagnant water in the unit froze, ruptured the tubes inside the machine, filled the system with water, and flooded the area around the unit. Following the unit’s failure and the resulting damage, Bel Air filed a suit against Honeywell, alleging breach of contract and negligence. It is Bel Air’s contention that the unit and surrounding area were damaged because Honeywell did not *101 maintain the safety devices in proper working order. Honeywell denies liability, contending that the safety devices themselves were working properly as of June 1981, the time of Honeywell’s required annual inspection.
On appeal, Honeywell raises two issues:
1. Whether Bel Air presented sufficient evidence of either the standard of care owed by Honeywell in the performance of the service agreement or any negligent act or omission for which Honeywell was responsible, which would justify the trial court’s denial of Honeywell’s motions for directed verdict and judgment notwithstanding the verdict.
2. Whether the trial court erred when it refused to allow Honeywell’s witness, Joseph M. Monahan, Jr., to testify concerning the operation of the subject air conditioning unit and the interplay of the various safety and operating controls on the unit.
At trial, Bel Air’s expert witness, Paul Borrego, testified that the unit’s safety devices, which are covered by Honeywell’s agreement with Bel Air, should have prevented the unit’s failure, and, thereby, the resulting damage. However, according to Borrego, these devices had been disconnected, circumvented, miswired, eliminated, left uncalibrated, or otherwise compro-, mised, thus making them ineffective. In addition, although no evidence was presented which suggested that Honeywell’s employees were responsible for the improper wiring of the safety devices, Bel Air did obtain an admission from Honeywell in which Honeywell admitted that it knew, some two years prior to the breakdown, that certain safety devices were circumvented or miswired, but Honeywell did nothing to correct the problem, nor did it notify Bel Air of the improper wiring.
Honeywell denies liability, on the ground that its service agreement with Bel Air expressly excluded maintenance or repair of the unit’s wiring. However, it is undisputed that Honeywell did assume responsibility to inspect the safety devices and that the devices were improperly wired, or completely unconnected. Furthermore, Mr. Borrego's testimony was that one or more of the devices were improperly calibrated, thus making the device or devices ineffective. Calibration of the safety devices was specifically one of Honeywell’s contractual duties.
In reviewing a directed verdict case, we must view the evidence in a light most favorable to the non-moving party. If there is any evidence in favor of the non-movant, a directed verdict is improper. Adams v. Travelers Ins. Co., 494 So.2d 401 (Ala.1986).
There was evidence from which the jury could conclude that, although it had no contractual obligation to do so, Honeywell did undertake the duty to inspect the safety devices. Assuming the jury did so find, then a jury issue was presented as to whether Honeywell acted reasonably under these circumstances. Accordingly, we affirm the trial court’s order denying the defendant’s motion for directed verdict.
Honeywell also contests the court’s denial of its motion for judgment notwithstanding the verdict. Such a motion tests the sufficiency of the evidence in the same way as does the directed verdict, Ala.R.Civ.P. 50, Committee Comments. The motion should be denied when there is any conflict in the material evidence for the jury to decide, White v. Packer, 345 So.2d 312 (Ala.Civ.App.1977); McLarty v. Wright, 56 Ala.App. 346, 321 So.2d 687 (1975), with the evidence being viewed in the light most favorable to the party who secured the verdict. Hanson v. Couch, 360 So.2d 942 (Ala.1978); Spurlin v. General Motors Corp., 528 F.2d 612 (5th Cir.1976); White v. Packer, supra. Therefore, because Paul Borrego’s testimony presented evidence to support Bel Air’s claims, a conflict existed and the trial court properly denied Honeywell’s motion for J.N.O.V. As to the second issue on appeal, Honeywell contends that the trial court erred when it refused to allow Honeywell’s non-expert witness, Joseph M. Monahan, Jr., to testify regarding the sequence in which the various safety devices would operate to turn off the unit in the event the water flow ceased. Honeywell cites Paragon Engineering, Inc. v. Rhodes, 451 So.2d 274 (Ala.1984), as authority for its argument that a witness, such as Monahan, need not be an expert in the technical sense to be competent to testi *102 fy as to things he knows by study, practice, experience, or observation on a particular subject.
While Paragon Engineering does hold that one need not be a properly qualified expert witness to give evidence on subjects with which he is knowledgeable, the record in this case clearly shows that Joseph Monahan was allowed to testify regarding the unit and his knowledge of it. The only question that Monahan was not permitted to answer was a hypothetical one, and he was not qualified by Honeywell as an expert. Alabama’s case law is clear that a non-expert may not be permitted to answer a hypothetical question:
“ ‘A nonexpert witness cannot give an opinion except when it is derived from facts known to him and disclosed by him to the jury. A hypothetical state of facts is, therefore, not an allowable basis for the opinion of a non-expert.’ Ragland v. State, 125 Ala. 12, 27 So. 983, 986, and cases therein cited. The reason for the above rule is that the hypothetical form of presentation is proper only when the testifying witness possesses superior knowledge and skill in drawing inferences from certain premises. A lay witness giving his opinion as to the sanity or insanity of a defendant must first have testified as to the premises on which he bases his opinion. The jury is then in position to weigh the creditability to be attached to such opinion. See Wigmore on Evidence, Section 679.”
Grissom v. State, 33 Ala.App. 23, 28, 30 So.2d 19, 24, cert. den., 249 Ala. 125, 30 So.2d 26 (1947).
Therefore, we hold that the trial court properly refused to allow Monahan, a non-expert, to answer Honeywell’s hypothetical question. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.